# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-512


**STATE OF LOUISIANA**

**VERSUS**

**MICHAEL EDWIN VICE**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 18640-18
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Jonathan W. Perry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 6547**
**Lake Charles, Louisiana 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Michael Edwin Vice**

**Stephen C. Dwight**
**District Attorney**
**David S. Pipes**
**Assistant District Attorney**
**Fourteenth Judicial District Court**
**Post Office Box 3206**
**Lake Charles, Louisiana 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**SAVOIE, Judge.**

Defendant, Michael Edwin Vice, was charged by indictment filed on October 11, 2018, with second degree murder, a violation of La.R.S. 14:30.1. Jury selection began on September 16, 2021, and on September 24, 2021, Defendant was found guilty as charged.

A Motion for New Trial was filed on November 9, 2021, and denied on January 26, 2022. Defendant was sentenced to serve life in prison without benefit of parole, probation, or suspension of sentence on February 22, 2002. After Defendant was sentenced, he filed a "Notice of Appeal and Motion to Appoint Appellate Counsel and Request for Transcripts," which was granted.

Defendant is now before this court raising several evidentiary issues. For the following reasons, we affirm Defendant's conviction.

## FACTS

Defendant shot Lori Estelle Tanner on August 1, 2018, while the two were inside his vehicle. Tanner died as a result of the shooting.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent involving the sentence imposed.

The trial court failed to impose the sentence at hard labor even though a sentence for second degree murder must be imposed at hard labor. La.R.S. 14:30.1. Thus, the sentence is illegally lenient. *State v. Perkins*, 13-245 (La.App. 3 Cir. 11/6/13), 124 So.3d 605. Although the authority is granted and discretionary under La.Code Crim.P. art. 882, "[t]his court will not consider an illegally lenient sentence

unless it is an error raised on appeal." *State v. Thornton*, 20-425, p. 2 (La.App. 3 Cir. 5/5/21), 318 So.3d 1019, 1020.

## ASSIGNMENT OF ERROR

Defendant contends he was denied a fundamentally fair trial by the admission of evidence and testimony that violated various evidentiary rules, in violation of the Due Process Clause of U.S. Const. amend XIV and La.Const. art. 1, § 16.

## I.     *Prosecutorial Error with Regard to Potential Witnesses*

Defendant contends the State did not call the names of witnesses Charles Hunter and Officer Kristen Howell when sounding the list of potential witnesses during voir dire. Thus, prospective jurors were not questioned about any relationship with these witnesses. Additionally, Hunter did not appear on the State's witnesses list provided to Defendant prior to trial. Furthermore, neither of the witnesses was placed under the rule of sequestration.

### A.     *Hunter and Howell*

During trial, the State called Hunter, Chief Investigator with the Calcasieu Parish Coroner's Office, to testify. At the request of defense counsel, a bench conference was held outside the presence of the court reporter. Thereafter, the trial court informed the jury that the list of potential witnesses previously read during voir dire did not contain Hunter's name, and the court asked if any of the jurors knew Hunter. Juror Garrett Beaugh provided information as to his familiarity with Hunter and his relatives. Defense counsel then presented his concerns to the court, noting Hunter's name was in discovery. The trial court asked defense counsel if the issue could be corrected by releasing Beaugh. Counsel stated he did not think Beaugh was the problem, and he wished to speak to Defendant about the matter. Counsel then questioned Beaugh. Thereafter, the trial court gave the parties the opportunity

2

to strike Beaugh, and the State declined. The following day, defense counsel maintained his objection to the State's lack of calling Hunter's name. He then noted there was a third circuit case on point, and there would be no grounds for removing Beaugh and substituting an alternate juror. He maintained there was a "fairness issue." Defense counsel further suggested there was no remedy available. Defense counsel never exercised his right to strike Beaugh.

Later, the parties discussed calling Officer Howell to testify. The State acknowledged that her name did not appear on the State's subpoena list because it was not previously aware that she collected evidence from the victim's purse and Officer Howell's testimony was necessary to establish chain of custody. Defense counsel objected to her testimony on the basis of fundamental fairness. Defense counsel stated:

> I don't have a particularized right in defending my client to ask questions to Jurors about potential witnesses. That's the sum of that Third Circuit case is that because the State doesn't have to give us a witness list, I clearly don't have an explicit right to question about each and every potential witness.

Counsel further noted that Officer Howell was not a surprise witness. However, she was the second witness the State had not disclosed during voir dire. Defense counsel acknowledged that he could ask the court to declare a mistrial, but that was a drastic remedy. He subsequently said the court could decide if there was any redress allowed under the law. The trial court noted the objection and said it would not disallow the witness based on the representations made.

Defendant contends that he requested the names and addresses of all prosecution witnesses, but he acknowledges that the names of witnesses are generally not discoverable. He claims, however, that fundamental fairness may require disclosure of that information.

3

The State argues that the law does not require the production of a witness list, and it did not provide a pleading or discovery response setting forth the names of the witnesses it intended to call but merely recited their names during voir dire. In support of this argument, the State cites La.Code Crim.P. art. 716(F), which states "[n]othing contained in this Chapter shall obligate the state to provide to any defendant a witness list for any trial or pretrial matter." The State suggests the failure to include Hunter and Officer Howell on such a list or to sound their names during voir dire is of no moment because defense counsel conceded the issue was null. Further, Defendant did not request that Hunter be excluded nor did he request any other relief from the trial court. The State advises that La.Code Crim.P. art. 841 requires more than a simple objection. It requires the objecting party to make known to the court the action he wishes the court to take. Moreover, Defendant did not allege surprise or establish actual prejudice from the calling of either witness.

Defendant filed a motion for discovery on January 23, 2020, that included a request for the names and addresses of all prosecution witnesses, citing La.Admin. Code tit. 22, § 719(B)(3). This portion of Louisiana's Administrative Code sets out performance standards for public defenders, and Section 719(B)(3) states that counsel should consider seeking discovery of the names and addresses of all prosecution witnesses. However, there is no indication in the record that the State provided a witness list to Defendant, and Defendant provides no record citation to such a list. Moreover, Defendant is not entitled to a witness list. La.Code Crim.P. art. 716(F). This conclusion is supported by the cases Defendant cited in his brief, *State v. Weathersby*, 09-2407 (La. 3/12/10), 29 So.3d 499 (per curiam), and *State v.*

*Vampran*, 491 So.2d 1356 (La.App. 1 Cir.), *writ denied*, 496 So.2d 347 (La.1986), which were decided prior to the effective date of La.Code Crim.P. art. 716(F).[1]

In *Weathersby*, 29 So.3d at 501(alteration in original), the supreme court stated:

> Secondly, "[t]he prosecutor's witness list generally is not discoverable in the absence of extraordinary circumstances." *State v. Jackson*, 608 So.2d 949, 957 (La.1992). Only when there is a "determination that there exist peculiar and distinctive reasons why fundamental fairness dictates discovery" is such material discoverable. *State v. Washington*, 411 So.2d 451, 451 (La.1982).

*Vampran*, 491 So.2d at 1363, set forth similar language and dealt with the names and addresses of the state's witnesses.

During voir dire, the State called the names of its potential witnesses, and neither Hunter nor Officer Howell were on that list. In *State v. Berry*, 95-1610 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, *writ denied*, 97-278 (La. 10/10/97), 703 So.2d 603, the defense objected to the addition of three witnesses to the witness list following voir dire because counsel did not have the opportunity to determine if a potential conflict existed with any of the jurors. The court overruled the objection and declined to reopen voir dire. When one of the three witnesses was called to the stand, defense counsel re-urged the objection, which was overruled. On appeal, the defendant made no allegations that any of the jurors were acquainted with any of the additional witnesses and failed to state any basis upon which a showing of prejudice to the defendant or impairment of his substantial rights could be made. The first circuit concluded that in the absence of any showing of prejudice to the defendant, the assigned errors lacked merit. *Id.*

---

[1]Subsection (F) applies to bills of information or indictments filed on or after January 1, 2014. *See* 2013 La. Acts No. 250, § 2.

Defendant acknowledged that Hunter's name was in discovery, and Officer Howell was not a surprise witness. Additionally, he did not request that Hunter be excluded nor did he request any other relief from the trial court. Furthermore, Defendant has made no declarations that he was prejudiced by the State's actions. Thus, any claim regarding the failure of the State to include Hunter and Officer Howell on the list of potential witnesses is without merit.

### B. Sequestration

Prior to the State calling its first witness, defense counsel moved for sequestration of the witnesses. Officer Brandon Guillory and Heather Powers were placed under the rule, and it was noted that Taylor Higginbotham was the State's first witness.

Defense counsel later asserted that multiple people who had not been placed under the rule of sequestration testified, such as Hunter, Officer Jessica Single, and Deputy Jennifer Hoffpauir. He suggested the witnesses sat together in the District Attorney's suite. However, he did not know if they spoke about the case. The court announced it did not have reason to believe the witnesses were sitting together discussing the case and found that counsel's concerns were valid but misplaced in this situation.

The State suggests that Defendant failed to establish any violation of the sequestration rule actually occurred, and he failed to request any curative action from the trial court. Defendant does not address the law applicable to sequestration or make any argument as to the trial court's statement that it did not have reason to believe the witnesses were sitting together getting their stories straight. Defendant merely says the trial court did not address the State's failure to present its witnesses to be placed under the rule.

6

In *State v. Strickland*, 94-25, p. 43 (La. 11/1/96), 683 So.2d 218, 236, the supreme court stated, "The mere fact that a state witness speaks to other witnesses does not establish a violation of the order of sequestration and does not show possible prejudice." Thus, Defendant's claim lacks merit.

## II. *Evidentiary Rulings Concerning the Admissibility of Evidence*

Defendant raises concerns as to the admissibility of a 911 call, a dispatch call, body camera footage, a crime scene video, text messages, and a cell phone video. The issues raised include authentication, best evidence, hearsay, and the denial of a motion for mistrial.

### A. *Best Evidence and Authentication*

#### i. *Applicable Law*

Defendant challenges the admissibility of the 911 and dispatch calls, body camera footage, and crime scene video under the best evidence rule.

> The "best evidence" rule is to be applied sensibly and with reason. *State v. Hayes*, 585 So.2d 619 (La.App. 2d Cir.1991). Absent a showing of prejudice to the defendant, a conviction will not be reversed on the ground that the best evidence was not produced. *State v. Moore*, 419 So.2d 963 (La.1982); *State v. Gaskin*, 412 So.2d 1007 (La.1982); and *State v. Coleman*, 486 So.2d 995 (La.App. 2d Cir.1986).
>
> . . . .
>
> All relevant evidence is generally admissible. La. C.E. art. 402. Relevant evidence is that which tends to show any fact of consequence to the charge. La. C.E. 401. A trial judge is vested with wide discretion in determining relevancy of evidence; his ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. *State v. Miles*, 402 So.2d 644 (La.1981).
>
> Pursuant to La. C.E. art. 1002, to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided by the Code of Criminal Procedure or other legislation. La. C.E. art. 1003 provides an exception to the general rule:

A duplicate is admissible to the same extent as an original unless:

(1) A genuine question is raised as to the authenticity of the original; (2) In the circumstances it would be unfair to admit the duplicate in lieu of the original; or
(3) The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.

Where the document offered in evidence is a mechanical reproduction of the original, and is its substantial equivalent, it is admissible unless the defendant can show that its content does not accurately reflect the original. *State v. Vincent*, 338 So.2d 1376 (La.1976); *State v. Lewis*, 567 So.2d 726 (La.App. 2d Cir.1990), *writ denied*, 575 So.2d 364 (La.1991).

*State v. Jackson*, 30,473, pp. 13–14 (La.App. 2 Cir. 5/13/98), 714 So.2d 87, 95–96, *writ denied*, 98-1778 (La. 11/6/98), 727 So.2d 444.

Louisiana Code of Evidence Article 1003, as noted in *Jackson*, addresses the admissibility of duplicates. Electronic duplicates are addressed in La.Code Evid. art. 1003.1: "A duplicate may not be deemed inadmissible or excluded from evidence solely because it is in electronic form or is a reproduction of electronically imaged or stored records, documents, data, or other information."

Louisiana Code of Evidence Article 1004 addresses the admissibility of other evidence of contents:

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:

**(1) Originals lost or destroyed.** All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;

**(2) Original not obtainable.** No original can be obtained by any available judicial process or procedure;

**(3) Original in possession of opponent.** At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents

8

would be a subject of proof at the hearing, and he does not produce the original at the hearing;

      **(4) Collateral matters.** The writing, recording, or photograph is not closely related to a controlling issue; or

      **(5) Impracticality of producing original.** The original, because of its location, permanent fixture, or otherwise, cannot as a practical matter be produced in court; or the cost or other consideration to be incurred in securing the original is prohibitive and it appears that a copy will serve the evidentiary purpose.

Pertinent definitions are set forth in La.Code Evid. art. 1001:

      **(3) Original.** An "original" of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative or any print therefrom. If data are stored in or copied onto a computer or similar device, including any portable or hand-held computer or electronic storage device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original".
      . . . .

      **(5) Duplicate.** A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or electronic imaging, or by chemical reproduction, or by an optical disk imaging system, or by other equivalent techniques, which accurately reproduces the original.

Also pertinent is the law regarding authentication.

The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La.C.E. art. 901(A). Such evidence may come in the form of testimony by a witness with knowledge that the matter is what it is asserted to be; indications of the item's distinctive characteristics, including its contents, substance, internal patterns, and other distinctive characteristics; or evidence describing the process or system used to produce the item and showing that the process or system produces an accurate result. *See* La.C.E. art. 901(B)(1), (4), and (9).

*State v. Rice*, 17-446, pp. 2–3 (La. 6/29/17), 222 So.3d 32, 33 (per curiam). "Absent

a clear abuse of discretion, the trial judge's determinations concerning relevancy and

admissibility should not be overturned." *State v. Cosey*, 97-2020, p. 13 (La. 11/28/00), 779 So.2d 675, 684, *cert. denied*, 533 U.S. 907, 121 S.Ct. 2252 (2001).

    *ii.*       *911, Dispatch Calls, Body Camera Footage, and Crime Scene Video*

Taylor Higginbotham, a dispatcher for Calcasieu Parish 911, testified that she remembered listening to the 911 call she received. She was asked, "If I showed you a copy of your recording, would you recognize it?" She was further questioned as follows:

Q     Is this the disk that you listened to, or is it not?

A     Yeah, my signature is not on there.

Q     Okay. Your signature is not on there. One moment.

     Is that your name on the back? I apologize. Is that where you signed?

A     Yeah.

Q     Okay. So this is the disk that you listened to earlier?

A     Uh-huh.

The State moved to introduce S-101, the 911 recording. Defense counsel objected "as to authentication" and stated, "I don't know who made that disk or where that disk came from. That is certainly not a certified 911 disk." Thereafter, Higginbotham was asked if "this disk is your call from that night." She answered affirmatively. She then agreed that the disk the State sought to introduce contained a fair and accurate depiction of the call. The State attempted to introduce the disk again, and defense counsel stated, "[T]he best evidence is clear. Why don't we have the original copy of the 911 call? Why are we taking a potentially third- or fourth-hand copy of a call that is being submitted as a public record?" The trial court

10

inquired, "Is that a disk of the call?" The State responded affirmatively. The trial court then noted the objection and allowed the introduction of the disk.

The State next moved to introduce a certified copy of the transcript of the 911 call as S-101(A) for demonstrative purposes. Defense counsel objected inasmuch as the person who made the transcript was not there to verify its authenticity. A bench conference was held outside the presence of the court reporter. The trial court then overruled the objection.

Defense counsel objected again when the 911 call was published to the jury, and the trial court noted the objection for the record.

The 911 call was transferred to Heather Powers, a communications officer with the Lake Charles Police Department. Powers examined S-102, a disk bearing her initials. She testified that she listened to the audio before she entered the courtroom, and S-102 contained the audio she listened to. Moreover, she acknowledged the audio reflected the conversation she had with a caller on August 1, 2018, "with great accuracy." The State then offered S-102. Defense counsel "renew[ed] the objection from earlier," which was noted by the trial court.

Next, the State offered S-102(A), a transcript of S-102. The trial court noted the "same objection" by defense counsel. S-102 was then played for the jury. Powers subsequently agreed that S-102 was the call she received.

After Powers testified, the trial court noted defense counsel had contemporaneously objected to the State's offerings, and it had told defense counsel that he could make a full explanation outside the presence of the jury. As to S-101, S-101(A), S-102, and S-102(A):

> Defense objected to - - for both of them, the authentication and the best evidence rules as to their admission as evidence in the matter.

11

Then as to the publishing before the Jury, Defense offered an objection based on hearsay. There was no testimony offered that the contents of those documents were an exception to the hearsay rule as promulgated in the Code of Evidence. So the Defense objects to the Court's overruling of the objections.

On appeal, Defendant contends there was no evidence that the original of the 911 call or dispatcher call were unavailable, and there was no explanation as to why the 911 call was not certified. Defendant suggests defense counsel "objected to the 911 call as the witness testified that her signature was not on the disk, apparently where it would be to authenticate the recording." Defendant cites La.Code Evid. arts. 1002 and 1004 in support of his argument. He later contends the trial court failed to properly perform its gatekeeping function when it failed to inquire about the availability of the original recording and failed to conduct a balancing test before admitting the evidence.

The State suggests S-101 and S-102 were properly authenticated via testimony by Higginbotham and Powers. Moreover, Defendant's arguments regarding the lack of reasons the original was not available ignore La.Code Evid. art. 1003's mandate that duplicates are admissible as an original, and La.Code Evid. art. 1004 applies to the introduction of other secondary evidence of the contents of the recording and not the copy of the recording itself.[2]

Regarding the body camera footage, Detective William Loving testified that to preserve the crime scene, he took his body camera off and recorded the inside of the vehicle where the victim and the firearm were located. The State offered Detective Loving's body camera footage as S-104. Detective Loving was asked if

---

[2]The State discusses the admissibility of the transcripts, S-101(A) and S-102(A), in its brief. Defendant provides the procedural history wherein the transcripts were admitted as S-101(A) and S-102(A). However, Defendant does not address the admissibility of the transcripts in his arguments in this court.

12

S-104 was a copy of his body worn camera footage. He testified that it was, and he knew that because he reviewed the footage earlier at the District Attorney's Office and initialed and dated "the top." Furthermore, that footage accurately reflected what he recalled from the evening at issue. Defense counsel re-urged "the authentication of the best evidence objections," which was overruled.

Defendant suggests the trial court failed to properly perform its gatekeeping function when it failed to inquire about the availability of the original recording and failed to conduct a balancing test before admitting the evidence.

The State suggests S-104 was properly authenticated by Officer Loving, and Defendant's best evidence argument is incorrect.

During the testimony of Charles Hunter, the State offered S-105, a video of the crime scene, the removal of the victim from the vehicle, and the examination of the victim's wound. Hunter was handed a disk and indicated he had reviewed the content of the disk, which was an accurate representation of what he observed. Defense counsel objected, alleging the video was a copy, not an official disc made by law enforcement or the forensic investigative unit, and a digital copy the State made. Furthermore, he did not know what was on the disk. The State explained the disk contained a shorter version of footage taken by police and included only what was inside the truck. The State further explained "the video footage that is here that Charlie Hunter has testified about is what was given in discovery to [defense counsel]. So he has access to this video footage. This is just a shorter version." The trial court overruled defense counsel's objection.

Defendant suggests this exhibit highlights the reason for the best evidence rule because the State acknowledged the evidence admitted was not the original or a complete copy of the original, and La.Code Crim.P. art. 1002 requires the contents

13

of a recording be proved by the original. Defendant points out the trial court made no inquiry as to why the original could not be produced and did not express concern that the evidence was an edited version of the video footage. He further suggests the State did not show the evidence was so voluminous that redaction was warranted, did not seek to admit the original video with the redacted version, and did not indicate the original was unavailable.

Defendant later contends the trial court failed to properly perform its gatekeeping function when it failed to inquire about the availability of the original recording and failed to conduct a balancing test before admitting the evidence. He further argues the trial court did not ensure that the redactions were not favorable to him, and he was not included in the decision regarding what was excluded.

The State argues S-105 was a digital copy of the recording, which was admissible under La.Code Evid. arts. 1003 and 1003.1. It suggests that inasmuch as Defendant received the original video in discovery, he was free to play the original video in its entirety and cannot complain when he chose not to do so. The State further suggests Defendant did not object to the redactions. Thus, any complaint regarding the redaction was not preserved for review.

  iii.  *Analysis 911/Dispatch Calls, Body Camera Footage & Crime Scene Video*

Defendant did not directly attack the authenticity of the 911 call in the trial court inasmuch as he alleged the 911 call was not what the State purported it to be. Defense counsel said the disk was not certified but did not explain his comment. In this court, Defendant says defense counsel objected to the 911 call because the witness testified that her signature was not on the disk, "apparently where it would be to authenticate the recording."

14

Louisiana Revised Statutes 13:3713.1 addresses certified 911 calls:

> A. Whenever a certified copy of any record or tape recording of any participating agency within a communication district operating an Enhanced Universal Emergency Number Service or Enhanced 911 Service is offered in evidence or when any court of competent jurisdiction has ordered the production of any record or recording of any participating agency within a communication district, a certified copy of such record or tape recordings, attested to by the custodian for the participating agency, shall be received in evidence with the same force and effect as though the original record or tape recording were produced, and it shall be sufficient compliance with any order of court to furnish copies so certified.

This statute does not address authenticity.

We find the issues raised in brief to this court regarding the above-discussed exhibits are best evidence claims inasmuch as Defendant suggests the State was required to produce the original recordings and the trial court was required to inquire as to the unavailability of the original recordings. Defendant did not address the admissibility of duplicates under La.Code Evid. arts. 1003 and 1003.1. Duplicates are admissible to the same extent as the original unless there is a general issue as to the authenticity of the original. Defendant did not raise an issue in the trial court regarding the authenticity of the originals. He merely asserted the exhibits presented by the State were not originals.

In *State v. Lawrence*, 40,278, 40,796, pp. 30–31 (La.App. 2 Cir. 3/15/06), 925 So.2d 727, 749–50, the second circuit discussed the use of copies or duplicates:

> The defendant points out that, at trial, Ms. Taylor stated that the 911 tape was a copy of the original. The defendant contends that, under La. C.E. art. 1002, to prove the content of a recording, the original recording is required except as otherwise provided by the Code of Evidence or other legislation. The record shows that when the state sought to introduce the copy of the tape, the defendant objected on the grounds of lack of foundation, hearsay, and lack of proper chain of custody. The defendant never complained that the tape was a copy of the original. Because this objection was not argued in the trial court, it is not properly before this court on appeal.

However, even if this argument were properly before the court, La. C.E. art. 1003 provides in pertinent part that a duplicate is admissible to the same extent as the original unless a genuine question is raised as to the authenticity of the original or in the circumstances it would be unfair to admit the duplicate in lieu of the original. No such questions have been raised in this case. See *State v. Joe*,[28,198 (La.App. 2 Cir. 7/26/96), 678 So.2d 586, *writ denied*, 97-559 (La. 10/31/97), 703 So.2d 16].

In *State v. Sullivan*, 596 So.2d 177, 189 (La.1992), *rev'd on other grounds*, 508 U.S. 275, 113 S.Ct. 2078 (1993), the supreme court addressed the defendant's best evidence or hearsay argument regarding a consent to search form:

Because the photocopy is the substantial equivalent of an original, its admission did not violate the best evidence rule (at that time La.Rev.Stat. § 14:436) in the absence of a showing the copy did not accurately reflect the original. *State v. Stuart*, 344 So.2d 1006 (La.1977). Defense counsel, having an opportunity to cross-examine the officer who provided the consent form, made no showing that the copy did not accurately reflect the original.

Based on these cases, we find Defendant has failed to prove a violation of the best evidence rule.

Defendant did not object to the crime scene video, S-105, on the basis that the video was redacted. A new basis for an objection cannot be raised for the first time on appeal. Thus, the issue has not been preserved for review. La.Code Crim.P. art. 841; *State v. Day*, 14-708 (La.App. 3 Cir. 12/23/14), 158 So.3d 120.

Additionally, Defendant did not object to the 911 and dispatch calls, body camera footage, and crime scene video on the basis that the trial court failed to perform a balancing test or that the evidence was more prejudicial than probative. Accordingly, this issue was not preserved for review. *State v. Taylor*, 12-0345

(La.App. 4 Cir. 6/26/13), 118 So.3d 65, *writ denied*, 13-1830 (La. 2/28/14), 134 So.3d 1169.[3]

#### iv.    *Cell Phone Video and Text Messages*

Defendant raises authentication and best evidence challenges to a cell phone video and text messages extracted from the victim's phone and a hearsay challenge to the text messages.  He also challenges the trial court's ruling on a motion for mistrial regarding the cell phone video.

At trial, Defense counsel argued that text messages and recordings extracted from the victim's cell phone were hearsay.  Furthermore, he had not received any videos.  He stated, "Those text messages are . . . according to what they have said - - are text messages between Michael Vice and the deceased."  He further argued there was no way to authenticate who sent the texts.

The State asserted the texts were admissible to show state of mind and the dynamic of the relationship of "these two people."  If the texts were used to prove the truth of the matter asserted, the State suggested they were admissible under La.Code Evid. art. 803(3) to prove then existing mental, emotional, or physical condition.  The trial court asked, "As to both Ms. Tanner and Mr. Vice?"  The State replied that Defendant was a party; therefore any texts sent by him were admissible as a matter of course.  The State further remarked,

> [T]his is also admissible evidence because it is the Defendant's statement as it relates to text messages between Ms. Tanner and Mr. Vice. . . . And so even messages between Ms. [Tanner] and her new boyfriend Mr. Juan Rodriguez, we believe that those are admissible as well because things like, hey, baby, you're looking good today.  We're not offering that for the truth of the matter asserted.  We are offering that to show, hey, look, this is the date wherein she has got her a new

---

[3]Post-conviction relief was granted on other grounds in *State v. Taylor*, 16-1252 (La.App. 4 Cir. 4/6/17), 313 So.3d 278.

love interest, who's reaching out to her, and she's losing interest in Mr. Vice.

Thereafter, the State noted there was a portion of a cell phone video wherein the victim referenced Defendant hurting her on the drive to Pascagoula and throwing her phone out the window. That portion of the video had been redacted.

Defendant countered that the texts were in fact being used to prove the truth of the matter asserted. Defendant noted the State lumped the texts with Rodriguez in and "said this is all of the same type of thing." He argued that statements by an opposing litigant had to be statements against interest to be admissible. Moreover, Defendant alleged he did not have any videos, any videos were also hearsay, and, like the text messages, were not subject to a claim that he was the party opponent. During this discussion, defense counsel said he had no extraction of Tanner's phone, but he had one of Defendant's phone. The court found "they" were admissible as then existing mental, emotional, and physical condition under La.Code Evid. art. 803(3).

As for the discovery issue, the State subsequently said the extraction report for Tanner's phone was given to Defendant in answers to discovery on December 18, 2019. Paragraph one of the response stated, "'Attached are the copies of - - . . . 'A 16-gigabyte flash drive data traveler, 100 gig G3.'" The State further indicated that Detective Willie Fontenot's report stated he was advised by Deputy Hoffpauir that there was a video on the victim's phone displaying Defendant and Tanner arguing. Additionally, the extraction report was on the list of evidence given to Defendant in discovery. The State also provided an extraction report for another cell phone. Defense counsel asserted the USB that the State provided was blank. A replacement USB was received, but the file labeled "Lori Tanner" was blank.

Tanner's cell phone was subsequently entered into evidence as S-5 during the testimony of Officer Howell. Officer Howell indicated it was removed from Tanner's purse, and defense counsel "continue[d] the objection." The USB containing the cell phone extraction was introduced as S-107 during the testimony of Deputy Hoffpauir, who performed the extraction. To the best of Deputy Hoffpauir's knowledge, S-107 was the USB she stored the extraction on, and S-5 was the cell phone the extraction was taken from. Defense counsel's objection to S-107 was noted by the trial court. On cross-examination, Deputy Hoffpauir was questioned as follows:

> Q      . . . When you say that you recall and that USB looks familiar; when was the last time you would have seen that USB that was in that envelope?
>
> A      Probably 2018.
>
> Q      Okay. So is it one of those you know it because you're the one that wrote on the envelope and said what it was that's in it?
>
> A      Yes.
>
>        . . . .
>
> Q      Okay. And that - - that's a normal USB, there's nothing special about it. It's just a standard USB.
>
> A      Correct.

Detective Fontenot testified that after concluding his interview of Defendant, he was informed by Deputy Hoffpauir that there was a video on Tanner's phone of the two traveling together. He testified that the video showed Defendant and Tanner having a quarrel while traveling to Mississippi. The State then moved to publish the video files from the extraction report found on S-107. Defense counsel asked the trial court to note his "contemporaneous objection continued from earlier." The record reflects three videos were then played for the jury.

Detective Fontenot indicated he reviewed texts between Tanner and Rodriguez, and he testified about those texts. Detective Fontenot also reviewed texts between Defendant and Tanner and verified that the messages were on both of their phones. He then testified about the content of the texts. After Detective Fontenot's testimony, the State rested.

The following day, defense counsel informed the trial court that after the State rested its case, he asked for a copy of S-107, the USB. Thereafter, the law clerk, while in the presence of "Madam Clerk," made a copy of the USB then placed it back inside the envelope. Defense counsel asserted the State played three videos during Detective Fontenot's testimony, the first of which was alleged to be a video taken by Tanner inside a vehicle in the dark. The copy of the USB given to defense counsel by the law clerk did not contain that video, file number 0729182041. Upon arriving in court, defense counsel had "Madam Clerk" check the USB entered into evidence, and it did not contain the video. Defense counsel argued the State had shown the jury a video that was not in evidence.

The State said it had not looked at the exhibit in a "very long time since we first received a copy[.]" The State further stated it did not know what might have happened to the files when the USB was copied by the law clerk. The State noted that the evidence at issue was on S-5, the cell phone, which was in evidence. Thus, the video was not impermissibly shown to the jury.

Defense counsel again argued the video was not in evidence, and if Deputy Hoffpauir did not extract the video shown to the jury, "there can be no authentication made." He asserted that either the cell phone extraction produced incomplete results or the video was not on the phone. The State indicated that the extraction was a copy of what was on the phone, and the video would still be on the phone, "So he can

turn it on and look." The trial court asked defense counsel if the video was on the phone, and he replied, "I have no idea, Judge. I don't even know if the phone will power on at this point." Defense counsel asserted no one could have authenticated the video. Defense counsel stated, "[W]e don't know where it came from because according to Ms. Hoffpauir, it doesn't appear that it came from this USB drive. It doesn't appear based on the testimony and what was submitted yesterday that it[.] . . . didn't come from her extraction." The trial court felt the video was in evidence. The court further stated, "It's in evidence now. You can't unring that bell." The trial court asked defense counsel where the video came from. Defense counsel replied, "It could have come from that phone, it could have come from another phone. I don't . . . that's the issue." "Ms. Hoffpauir says this is the entire extraction report from Lori's phone . . . that she had in her possession when she died. That video is not on this extraction report." The State discussed its copy of the USB:

> I'm checking now our State's copy of a USB, . . . which was copied from the copy that we put into evidence. And I'm checking now to make sure that all three videos are on it, I'm checking for that. I would ask also before we proceed too far that . . . if the State can reinspect, if you will, the exhibit itself to verify what [defense counsel] has determined if that's okay, Judge.

The trial court subsequently stated it had not made a record of the issue and asked defense counsel to do so.

Defense counsel acknowledged that two other videos on S-107 were properly admitted. He then alleged the video at issue was not evidence and was improperly published.

Defense counsel subsequently moved for a mistrial. Defense counsel alleged the State did not provide the video and did not submit the video. He suggested the video came from somewhere else or that another extraction was performed. He then

asked for a mistrial again, stating it was not possible to know whether the jury could render a verdict because of an error the State made. He again argued the video was not in evidence, was improperly played for the jury, and was not in evidence solely because it was published. He said it was not authenticated. He noted the trial court did not have to grant a mistrial, and, at a minimum, there should be an exclusion of any reference to the video.

The State addressed the discovery issue, stating that Detective Fontenot's supplemental report detailed the content of the video at issue, the first supplemental answer to discovery contained a flash drive, and the sixth supplemental answer to discovery contained transcripts of cell phone audio. So, even if there was an issue with the USB sent in discovery, the transcript of the video at issue, 0729182041, was provided to Defendant. The State then addressed S-107. It argued that S-107 contained the extraction of Tanner's cell phone, but the exhibit had been handled/accessed since it was offered in evidence. The file name for the video was found on S-107. However, it appeared it was now saved as a JPG as opposed to an MP4 as it originally was. The State noted that the cell phone had been admitted as S-5, and it contained the same video. Thus, the video at issue was in evidence. Accordingly, the video was properly published. The State then moved to file its copy of S-107 into the record. The State believed the video was on S-107 when it was introduced and asked to supplement the record.

Defense counsel repeated the events surrounding the copying of the USB by the law clerk. Defense counsel offered his understanding of what JPG and MP4 files were and suggested that an MP4 could not be converted to a JPG without an extensive process. Defense counsel opined the extraction program produced a thumbnail, which was a JPG file, instead of the video. He then asserted the video

22

was not in evidence because the State had access to it by means other than the initial extraction. He alleged the video was taken from Tanner's phone sometime after the initial extraction and given to the State. He again noted he received transcripts of audio files but not the videos. Defense counsel informed the trial court that he did not understand the State's argument that the video at issue was on S-5 inasmuch as the officer testified that she did an extraction, and what was on the phone was on the USB. However, the video was not on the USB. Defense counsel stated:

> If the State had wanted to go through and use the actual best evidence of what was actually on the phone . . . .
>
> . . . .
>
> Defense has consistently objected to the best evidence issue. The State is not submitting the originals. The State is submitting District Attorney copies. In this case, this S-107, they submitted the actual best evidence, the actual best copy that law enforcement made for the extraction. And it doesn't have what the State purports that it has on it.

Defense counsel continued to allege the video was improperly played to the jury without being admitted. Thus, a mistrial should be granted.

The trial court stated the discovery issue was "concerning to the Court," but "that issue is for another day." The trial court addressed whether the video was in evidence, stating:

> It was played for the Jury, it was admitted by the Court. Now, is it on that USB port? No. I believe it is in evidence. Now, whether or not I'm going to allow the State to fix the problem, if you will, I don't - - what I'm going to do is allow you . . . to proffer it.
>
> You know, I think that would be improper for me to allow you to do something else to something that's already in evidence. . . .
>
> Now, you want to proffer that so that in the event there is an appeal from a completed trial, then obviously another court can consider that information.

23

The trial court then denied the request for mistrial. Defense counsel objected to the trial court's finding that the video was in evidence and to the denial of the mistrial. The trial court further stated it did not think the video was improperly published to the jury because the State requested that it be published. The trial court stated that whether the video was in evidence was another issue. The State then proffered its copy of S-107.

Defendant sought review of the trial court's denial of his motion for mistrial, arguing the trial court erred in allowing the State to publish a video to the jury that had not been admitted into evidence or properly authenticated. This court held:

> **WRIT DENIED:** Defendant seeks review of the trial court's denial of his motion for a mistrial due to the State's improper publication of a video extracted from the victim's phone. The video does not appear to be on the USB drive that was admitted into evidence as S-107 which purportedly contained all of the data extracted from the victim's phone by law enforcement. Based on the extraction report contained in S-107, it is clear that the video, although not located on S-107, was extracted from the victim's phone. As the victim's phone was also admitted into evidence as S-5, this court finds the video was already admitted into evidence when the video was published. As the video was already in evidence, there was no error in publishing the video or refusing to grant a mistrial because of said publication. Accordingly, Defendant's writ application is denied.

*State v. Vice*, 21-619 (La.App. 3 Cir. 9/23/21) (unpublished opinion).

*a. Mistrial Analysis*

Defendant seeks review of the trial court's denial of his request for a mistrial, alleging this court's prior analysis was flawed. Defendant cites *State v. Dickerson*, 14-170, p. 9 (La.App. 3 Cir. 6/4/14), 140 So.3d 904, 909, *writ denied*, 14-1466 (La. 3/13/15), 161 So.3d 638, wherein this court addressed the law of the case, stating:

> Under the "law of the case" doctrine, prior decisions of the appellate court are considered binding and may not be reconsidered on appeal absent clear error. *Juneau v. State*, 06–1653 (La.App. 3 Cir. 5/2/07), 956 So.2d 728, *writ denied*, 07–1177 (La.9/14/07), 963 So.2d 1004; *State v. Molineux*, 11–275 (La.App. 4 Cir. 10/19/11), 76 So.3d

24

617, *writ denied*, 11–2556 (La.3/30/12), 85 So.3d 117. "[T]he [law of the case] doctrine is discretionary and should not be applied where it would effectuate an obvious injustice or where the former appellate decision was clearly erroneous." *Juneau*, 956 So.2d at 733 (quoting *Trans La. Gas Co. v. La. Ins. Guar. Ass'n*, 96–1477 (La.App. 1 Cir. 5/9/97), 693 So.2d 893, 896) (alternations in original).

This court declined to follow the law of the case doctrine in both *State v. Ryder*, 22-358 (La.App. 3 Cir. 10/26/22), 353 So.3d 855,[4] and *State v. Bryant*, 21-240 (La.App. 3 Cir. 12/22/21), 333 So.3d 495. However, in *State v. Dugas*, 21-85, p. 11 (La.App. 3 Cir. 5/11/22), *writ denied*, 22-947 (La. 9/7/22), 345 So.3d 426 (unpublished opinion),[5] the court stated, "[T]his court has continued to apply the doctrine as a discretionary tool of judicial economy . . . . The present case provides another illustration of the need for the use of the doctrine in some form."

Defendant asserts this court's analysis in his writ application was flawed inasmuch as the record does not indicate that anyone looked at the content of S-5 to determine if the video was on the phone. Defendant suggests he did not bear that responsibility. He alleges the State should have assured the video was on the phone and, if it was present, that it was the same or substantially similar to the video published to the jury.

Defendant also contends that the trial court and this court in its prior review should have addressed the State's failure to provide the video in discovery and the one-sided redaction of the video. He suggests he should have been presented with the redacted video prior to its presentation to the jury to assure he found it acceptable. Moreover, the State had the burden of authenticating the video prior to its admission.

---

[4]2022 WL 14725447.

[5]2022 WL 1487006.

"Merely assuming it was on the cellphone was insufficient to meet the State's burden of proof as to the admissibility of the evidence." Defendant then suggests his request for a mistrial should have been granted as it was impossible for him to receive a fair trial because the jury had been tainted by the publishing of the video, and the video was crucial to the State's case. He further contends the State failed to offer both the original and redacted version of the video, making it impossible for appellate counsel to know what was presented to the jury and whether the redacted version might have presented evidence in a different light. Furthermore, defense counsel was not able to fully evaluate the evidence in preparation for trial and not able to review the evidence in preparation for closing arguments. Defendant suggests the State's failure to assure the evidence it purported to offer was in fact part of the offering resulted in prejudice to him.

The State suggests the record establishes that Deputy Hoffpauir extracted the video from the cell phone. Absent something in the record establishing this is manifestly erroneous, Defendant's argument fails.

Defendant has not presented any new evidence. He asserts someone should have checked the phone to see if it contained the video. However, in his prior writ application, Defendant noted the "trial court did not verify that the video in question was on the deceased's cellphone." The record additionally indicates the State said defense counsel could turn on the phone, and the trial court asked defense counsel if the video was on the phone and he said he did not know if it would power on. Defendant has not proven this court's prior ruling was clearly erroneous.

Following *Ryder* and *Bryant*, the denial of the motion for mistrial will not be reviewed as Defendant has not set forth any law, jurisprudence, or the standard of review applicable to a motion for mistrial. Uniform Rules—Courts of Appeal, Rule

26

2-12.4. *Cf. State v. Blade*, 20-172, 20-173 (La.App. 3 Cir. 4/28/21) (unpublished opinion),[6] *writ denied*, 21-754 (La. 10/1/21), 324 So.3d 1059.

The trial court found the discovery issue concerning but said it was "for another day." Inasmuch as there is no ruling from the trial court on the issue, Defendant's claim that the State failed to provide the video in discovery is not properly before this court for review.

Additionally, the motion for mistrial was not based on the State's redaction of the cell phone video. When the State informed the trial court that the video presented to the jury was a redacted version of the video, defense counsel did not object on that basis. Thus, this issue is not properly before this court for review. La.Code Crim.P. art. 841.

>  b. *Authentication and Best Evidence of Cell Phone Video and Text Messages*
>     *Analysis*

Defendant suggests the admission of the texts and cell phone video are counter to La.Code Evid. art. 1002's requirement that the original documents be produced to prove the content. Additionally, he contends the trial court did not perform its gatekeeping function when it failed to inquire as to the availability of the original recordings and did not perform a balancing test. He argues the video was not authenticated because it was not on the USB, and the texts were not authenticated because the extraction report was not complete. He suggests that although the texts were arguably part of the extraction report, the authentication of the report cannot be relied on as it was proven incorrect.

---

[6] 2021 WL 1662763.

27

The State notes Deputy Hoffpauir performed the extraction, and the texts and cell phone video at issue were discovered. Despite defects in the USB that contained the extraction report, the data extracted from the cell phone was identified by the witness who performed the extraction and published through a second witness, Detective Fontenot, who was familiar with the contents. Moreover, Detective Fontenot verified the texts were on the phones of the victim and Defendant. The State suggests the evidence was authenticated under La.Code Evid. art. 901(B)(1) and (4).

The record indicates that S-107 contained the original extraction of texts and videos removed from S-5, Tanner's cell phone. Defendant is not arguing the texts and cell phone video at issue are not what the State purports they are. Defendant's argument is centered on the fact that a cell phone video was not present on the USB the day after the USB was admitted into evidence. However, S-107 was played for the jury after it was admitted into evidence and prior to being handled by the law clerk. We cannot account for what happened with S-107 after that. Further, this court cannot say the extraction report admitted by the trial court was incomplete. Moreover, the extraction report from August 2018 found on S-107 lists video 0729182041 as an MP4 file, the State's proffer of S-107 contains the video at issue, and Detective Fontenot testified that he was informed by Deputy Hoffpauir of a video she found when performing the extractions. In that video, Tanner and Defendant were arguing while traveling.

Defendant did not object to the admissibility of the texts and cell phone video on the basis that the trial court failed to perform a balancing test or that the evidence was more prejudicial than probative. Accordingly, this issue was not preserved for review. *Taylor*, 118 So.3d 65.

*c.  Hearsay Analysis of Text Messages*[7]

Defendant contends the text messages presented by the State were offered to prove the truth of the matter asserted and not merely that "the two" had communicated.  Defendant suggests the admission of the text messages was not harmless in light of the admission of other evidence where the trial court did not fulfill its gatekeeping function.  Defendant suggests the evidence, including the videos presented by the State, contributed to the verdict because the evidence was not cumulative of other evidence admitted, the State offered no other evidence to prove the status of the relationship between him and the victim, and the evidence was necessary to attack the credibility of Defendant's version of the events.

The State suggests the victim's texts were admissible under a valid exception to the hearsay rule, and Defendant's texts are not hearsay and were admissible under La.Code Evid. arts. 801(D)(2) and 803(3).[8]  Louisiana Code of Evidence Article 801(D)(2)(a) provides that a statement is not hearsay if it is a personal statement offered against a party and it is his own statement.  As previously noted, La.Code Evid. art. 803(3) provides for the admission of evidence relating to then existing mental, emotional, or physical condition.

Defendant has not specifically stated whether his complaint involves all texts referenced by Detective Fontenot, texts between Tanner and Rodriguez, or texts between himself and Tanner.  Additionally, Defendant does not address the trial court's ruling that texts were admissible as then existing mental, emotional, or physical condition under La.Code Evid. art. 803(3) and therefore not excluded by

---

[7]Outside of discussing the proceedings had in the trial court, Defendant does not claim the videos presented by the State were inadmissible hearsay.

[8]The State does not address texts between Rodriguez and Tanner.

29

the hearsay rule. Furthermore, Defendant does not address the content of the text messages.

Defendant notes, during a discussion of the proceedings, that Detective Fontenot testified that messages between Defendant and Tanner began:

> somewhere around May 2018, where they appeared to be happy. In mid-July, the texts included one where the two discussed finding a house to rent, along with their roommate Paul. On July 24, 2018, a text that purportedly came from Vice's phone appears to call Tanner out for doing something at work to embarrass him. Throughout the next week, the texts dealt with work, transportation, the upcoming trip and possible issues between the two.

Defendant provides record references to three of the thirty pages of testimony about text messages between himself and Tanner. As for testimony regarding messages between Tanner and Rodriguez, which can be found on approximately four pages of the record, Defendant merely states that the messages began around July 26, 2018, and ended on August 1, 2018.

If the texts at issue include those between Defendant and Tanner, his brief fails to comply with Uniform Rules—Courts of Appeal, Rule 2-12.4(A)(9)(a) inasmuch as he does not make a record reference to all testimony by Detective Fontenot regarding those messages. Additionally, Defendant has not explicitly addressed the content of any of the text messages presented by the State. Without reviewing the thirty-four pages of testimony at issue, we cannot address whether the texts were used by the State to prove the truth of the matter asserted. The arduous task of reviewing the content of those messages is not the responsibility of this court but that of Defendant who alleges the texts were inadmissible. Defendant further claims the evidence presented in the texts was not cumulative of other evidence presented by the State. However, Defendant has not addressed the content of the testimony and other evidence presented at trial. He merely makes conclusory

allegations that the texts were used to support the State's theory of the case.  For these reasons, Defendant's hearsay claim has not been considered.  *See Blade*, 20-172, 20-173.

> *d.  Cumulative Error Claim*

Defendant also makes an assertion that we have interpreted as a cumulative error claim.

> Although admissibility of one of the objected[-]to recordings might not reach the level of showing prejudice to the defense, the admissibility of all of the recordings and the text messages, over the defense's objections based on lack of sufficient authentication and the best-evidence rule, and, especially, without any inquiry by the trial court as to the unavailability of the original recordings, amounts to prejudice to Michael Vice as the proceedings were fundamentally unfair. . . . Not only were [sic] the objected-to evidence not properly authenticated, the State failed to prove an exception to the requirement that the best-evidence must be admitted.  Further, the State was permitted to edit recordings without review of what was deleted or missing from the recording, and allowed to publish recordings without admitting the redacted recordings for further review.

The State suggests that the claims raised by Defendant lack merit, and cumulation claims are disfavored.

In *State v. Brown*, 18-1999, pp. 117-18 (La. 9/30/21), 330 So.3d 199, 284 (alterations in original), *cert. denied*, ___ U.S. ___, 142 S.Ct. 1702 (2022), the supreme court discussed cumulative error:

> This Court has held "the combined effect of the incidences complained of, none of which amounts to reversible error [does] not deprive the defendant of his right to a fair trial." *State v. Copeland*, 530 So.2d 526, 544–45 (La. 1988), quoting *State v. Graham*, 422 So.2d 123, 137 (La. 1982), *appeal dismissed*, 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983). Although the Court has often reviewed cumulative error arguments, it has never endorsed them. Instead, the Court has consistently found that harmless errors, however numerous, do not aggregate to reach the level of reversible error. *See, e.g., State v. Strickland*, 93-0001, pp. 51-52 (La. 11/1/96), 683 So.2d 218, 239; *State v. Taylor*, 93-2201 (La. 2/28/96), 669 So.2d 364 (unpub'd app'x.); *State v. Tart*, 94-0025, p. 55 (La. 2/9/96), 672 So.2d 116, 164; *State v. Copeland*, 530 So.2d 526, 544–45 (La. 1988) (citing *State v. Graham*,

422 So.2d 123, 137 (La. 1982); *State v. Sheppard*, 350 So.2d 615, 651 (La. 1977)). Other courts treating the issue have reached the same conclusion. *See*, *e.g.*, *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (court rejects cumulative error claim and finds that "twenty times zero equals zero"); *Foster v. State*, 639 So.2d 1263, 1303 (Miss. 1994) (finding no "near errors" and so rejecting cumulative error analysis).

We find any claim regarding cumulative error is without merit.

## DECREE

For the reasons set forth herein, Defendant's conviction is affirmed.

**AFFIRMED.**